UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STANETTE M. ROSE,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration,<br><br>　　　　　　Defendant. | CASE NO. 13-cv-06048 BHS<br><br>REPORT AND RECOMMENDATION ON PLAINTIFF'S COMPLAINT<br><br>Noting Date: August 15, 2014 |

　　This matter has been referred to United States Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Judge Rule MJR 4(a)(4), and as authorized by *Mathews, Secretary of H.E.W. v. Weber*, 423 U.S. 261, 271-72 (1976).  This matter has been fully briefed (*see* ECF Nos. 13, 14, 15).

　　After considering and reviewing the record, the Court finds that the ALJ failed to provide legally sufficient reasons to discredit the medical opinions of examining physicians Shawn Kenderdine, Ph.D., Philip Dunbar-Mayer, Psy.D., and Hilary Witaker-

Clark, Ph.D.. Because these errors were not harmless, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration.

## BACKGROUND

Plaintiff, STANETTE M. ROSE, was born in 1958 and was 42 years old on the amended alleged date of disability onset of October 1, 2011 (*see* Tr. 22, 219, 221). Plaintiff completed school through her sophomore year in college and held several professional licenses related to her stockbroker work (Tr. 54). Plaintiff has work experience as a stockbroker, sales representative, and financial advisor (Tr. 91, 259). Plaintiff was fired from her stockbroker position because of her "behaviors as a manic person" (Tr. 62).

According to the ALJ, plaintiff has at least the severe impairments of "bipolar disorder; anxiety disorder; panic disorder; and alcohol dependence in remission (20 CFR 404.1520(c) and 416.920(c))" (Tr. 24). At the time of the hearing, plaintiff was living with her partner of four years (Tr. 56).

## PROCEDURAL HISTORY

Plaintiff's applications for disability insurance ("DIB") benefits pursuant to 42 U.S.C. § 423 (Title II) and Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act were denied initially and following reconsideration (*see* Tr. 104-15, 116-27, 130-41, 142-53). Plaintiff's requested hearing was held before Administrative Law Judge David Johnson ("the ALJ") on April 17, 2013 (*see* Tr. 44-100). On May 23, 2013, the ALJ issued a written decision in which

the ALJ concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.19-43).

On October 16, 2013, the Appeals Council denied plaintiff's request for review, making the written decision by the ALJ the final agency decision subject to judicial review (Tr. 1-6). *See* 20 C.F.R. § 404.981. Plaintiff filed a complaint in this Court seeking judicial review of the ALJ's written decision in December 2013 (*see* ECF Nos. 1, 3). Defendant filed the sealed administrative record regarding this matter ("Tr.") on February 24, 2014 (*see* ECF Nos. 10, 11).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Whether or not the ALJ properly assessed plaintiff's Residual Functional Capacity ("RFC"); and (2) Whether or not the ALJ provides a sufficient basis for questioning the credibility of plaintiff (*see* ECF No. 13, p. 2).

STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits if the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).

//

//

//

DISCUSSION

(1) Whether or not the ALJ properly assessed plaintiff's Residual Functional Capacity.

Because the ALJ's conclusions regarding plaintiff's Residual Functional Capacity ("RFC") necessarily involve the ALJ's consideration of the psychologists' opinions, plaintiff argues that because the ALJ improperly evaluated these opinions, the ALJ's RFC is also called into question. Therefore, a review of the ALJ's consideration of the psychologists' opinions is necessary.

a. Shawn Kenderdine, Ph.D. – Examining Psychologist

Dr. Kenderdine evaluated plaintiff on January 6, 2012, on behalf of the State Department of Social and Health Services (Tr. 391-94). Dr. Kenderdine diagnosed plaintiff with Bipolar Disorder and Alcohol Dependence in remission and measured her GAF score at 47 (Tr. 391). He also opined that the "[s]everity of psychiatric symptoms in conjunction with relatively short period of abstinence significantly impairs her ability to tolerate normal work-related stressors." (Tr. 392). The ALJ gave this opinion little weight because of plaintiff's false statements regarding her living situation and because of plaintiff's statements regarding her financial advising business (Tr. 34). Plaintiff argues these were not legally sufficient reasons to discredit the opinion (ECF No. pp. 11-12). This Court agrees.

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician or psychologist. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (*citing Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)). But when

a treating or examining physician's opinion is contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester, supra*, 81 F.3d at 830-31 (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

      The ALJ first discredited Dr. Kenderdine's opinion stating that it is "greatly undermined by the claimant providing false statements to him regarding her living situation." (Tr. 34). Plaintiff reported to Dr. Kenderdine that she was living in her car, whereas the CDIU report noted that plaintiff was living with her significant other, Edward Colgate (Tr. 392, 407-08). The ALJ does not explain why this inconsistency would justify discrediting Dr. Kenderdine's opinion (Tr. 34). There is no evidence to support a finding that Dr. Kenderdine's opinion was based in significant part on this piece of information. It seems especially unlikely that the opinion would be based on this one statement from plaintiff when Dr. Kenderdine completed a mental status examination as part of the evaluation and noted observing many of plaintiff's mental health symptoms (Tr. 391, 393-94). The inconsistency regarding plaintiff's living situation is not a specific and legitimate reason for discrediting Dr. Kenderdine's medical opinion.

      The ALJ also noted that plaintiff's "reports to the CDIU detective regarding her business ventures weaken the doctor's opinion that she has stress tolerance limitations."

1  (Tr. 34). According to the CDIU detective, plaintiff reported that she started a business
2  with her significant other, and reported "doing really good getting new clients." (Tr.
3  409). Plaintiff also reported to the detective that they went to a business meeting every
4  week at a coffee shop where she would promote the business to other local business
5  owners. *Id.* She reported that these meetings usually lasted about an hour and a half and
6  would involve between twelve and sixty people. *Id.* Plaintiff testified at the hearing
7  regarding this business venture and reported that it had been unsuccessful and that it had
8  only generated $475 total (Tr. 59-60, 65). The ALJ noted the work activity was
9  unprofitable, but he declined to decide whether the work reached the level of substantial
10 gainful activity.
11
12      Dr. Kenderdine's opinion is supported by independent objective findings from a
13 mental status examination which demonstrated rapid and circumstantial speech, as well
14 as difficulties in memory, concentration, and exercising judgment (Tr. 393-94). Further,
15 because the evidence regarding the amount of work plaintiff performed is inconclusive, it
16 is not clear to this Court that it would be inconsistent with Dr. Kenderdine's opinion.
17 Plaintiff's statement to the CDIU investigator regarding her work attempt is not a specific
18 and legitimate reason to discredit the opinion of examining psychologist Dr. Kenderdine.
19
20      The Ninth Circuit has "recognized that harmless error principles apply in the
   Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)
21
22 (*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th
23 Cir. 2006) (collecting cases)). The court noted that "in each case we look at the record as
24 a whole to determine [if] the error alters the outcome of the case." *Id.* The court also

REPORT AND RECOMMENDATION ON
PLAINTIFF'S COMPLAINT - 6

noted that the Ninth Circuit has "adhered to the general principle that an ALJ's error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinsheki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).  Had Dr. Kenderdine's opinion been given full weight, it may very well have changed the disability determination.  Thus, the ALJ's error was not harmless.

### b.  Philip Dunbar-Mayer, Psy.D. – Examining Psychologist

Dr. Dunbar-Mayer conducted a psychological consultative evaluation of plaintiff at the request of the Administration on February 23, 2012 (Tr. 412-17).  Dr. Dunbar-Mayer diagnosed plaintiff with Bipolar I Disorder and Generalized Anxiety Disorder and measured her GAF score at 35 (Tr. 416).  Dr. Dunbar-Mayer noted that plaintiff had poor memory function, that her sustained concentration and persistence was inconsistent, that her social interaction and interpersonal relationships were limited, and that her ability to adapt to routine changes in a typical work setting is likely to be impacted by her symptoms (Tr. 417).  The ALJ gave weight to Dr. Dunbar-Mayer's opinions regarding plaintiff's concentration and cognitive functioning finding it consistent with the mental status examination (Tr. 34).  The ALJ gave little weight to the opined social limitations finding them based on plaintiff's unreliable self reports and inconsistent with other evidence in the record. *Id*.  The ALJ also found plaintiff's ability to operate a small

business undermined the doctor's opinion regarding plaintiff's adaptation abilities. *Id.* The ALJ further noted that plaintiff had a higher level of function with medication compliance. *Id.* Plaintiff argues the ALJ erred in evaluating this opinion (ECF No. 13, pp. 12-13). This Court, in part, agrees.

While the ALJ did provide specific and legitimate reasons to discount Dr. Dunbar-Mayer's social limitations, the ALJ did not provide adequate reasons to discount the opined adaptive limitations. As discussed above, the record contains limited information regarding the extent or duration of the work activity performed by plaintiff, specifically during the relevant time period. It is not clear to this Court that the opined limitations in adapting to change would be inconsistent with plaintiff's work activity. Regardless, the ALJ included a limitation to no more than occasional adaptation to changes in routine in the RFC finding. Therefore, even if the opined adaptative limitations were given credit, the ultimate disability determination would not change, thus any error regarding this limitation would be harmless. *See Molina*, 674 F.3d at 1115.

The ALJ did not specifically address Dr. Dunbar-Mayer's opined memory limitations (Tr. 34). The Commissioner "may not reject 'significant probative evidence' without explanation." *Flores v. Shalala*, 49 F.3d 562, 570-71 (9th Cir. 1995) (*quoting Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (*quoting Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981))). The "ALJ's written decision must state reasons for disregarding [such] evidence." *Flores, supra*, 49 F.3d at 571. Because the opined memory limitations were not included in the ALJ's RFC finding, it is assumed the ALJ did not accord weight to this limitation (Tr. 26). As such, the ALJ erred in failing to

articulate a reason to discredit this significant probative evidence. Because this evidence, if credited, may have changed the ultimate disability determination, this error was not harmless. *See Molina*, 674 F.3d at 1115.

While the ALJ noted that Dr. Dunbar-Mayer stated that medications would increase plaintiff's capability of employment and implied that plaintiff was not compliant with medication at the time this evaluation was completed, this was a misstatement of the doctor's comments (Tr. 34). Dr. Dunbar-Mayer wrote that "[t]he likelihood of the claimant's mental health condition improving in the next 12 months is fair as this diagnosis of Bipolar Disorder I and Generalized Anxiety Disorder is generally considered a lifelong condition and she will need to *continue* with therapy and active medication management." (Tr. 416-17) (emphasis added). This statement reflects a future prognosis of plaintiff's condition and does not demonstrate that plaintiff was not compliant with medications. As such, this reason for rejecting Dr. Dunbar-Mayer's opinion is not supported by substantial evidence in the record.

      c.  Hilary Whitaker-Clark, Ph.D. – Examining Psychologist

Dr. Whitaker-Clark evaluated plaintiff on behalf of the State Department of Social And Health Services on August 8, 2012 (Tr. 451-56). Dr. Whitaker-Clark diagnosed plaintiff with Bipolar I Disorder, rule out Schizoaffective Disorder, Panic Disorder without Agoraphobia, and Alcohol Dependence in Full Sustained Remission and measured her GAF score at 45 (Tr. 454). Dr. Whitaker-Clark also opined plaintiff would be markedly to severely limited in all but one assessed functional area (TR 454-55). The ALJ discredited the opined cognitive and social functioning limitations based on

plaintiff's unreliable self reports (Tr. 35).  The ALJ also noted that plaintiff's "symptoms were likely amplified due to her non-compliance with medication." *Id*.  Finally, the ALJ found the opinion inconsistent with plaintiff's daily activities including running a small business and judging a poetry event. *Id*.  Plaintiff argues these were not legally sufficient reasons to discredit the opinion (ECF No. 13, pp. 14-16).  This Court agrees.

"A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been" discounted properly. *Morgan v. Comm'r. Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (*quoting Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989) (*citing Brawner v. Sec. HHS*, 839 F.2d 432, 433-34 (9th Cir. 1988))).  However, like all findings by the ALJ, a finding that a doctor's opinion is based largely on a claimant's own accounts of his symptoms and limitations must be based on substantial evidence in the record as a whole. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999)).  Here the ALJ provides no support for his finding that the opinion was based to a large extent on plaintiff's subjective complaints (Tr. 35).  Dr. Whitaker-Clark performed a mental status examination and provided clinical observations in support of her conclusions (Tr. 455-56).

The Court notes that "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation. The Mental Status Examination allows the organization, completion and communication of these observations." Paula T.

Trzepacz and Robert W. Baker, The Psychiatric Mental Status Examination 3 (Oxford University Press 1993). "Like the physical examination, the Mental Status Examination is termed the *objective* portion of the patient evaluation." *Id.* at 4 (emphasis in original).

The Mental Status Examination generally is conducted by medical professionals skilled and experienced in psychology and mental health. Although "anyone can have a conversation with a patient, [] appropriate knowledge, vocabulary and skills can elevate the clinician's 'conversation' to a 'mental status examination.'" Trzepacz and Baker, *supra*, The Psychiatric Mental Status Examination 3.

All psychological evaluations must rely, at least in part, on plaintiff's subjective statements; however, here the opinion is well supported by objective psychological testing. Therefore, the ALJ's conclusion that the opinion was based in large part on subjective statements was not supported by substantial evidence.

Similarly, the ALJ's finding that plaintiff's symptoms were likely amplified due to non-compliance with medication is also not supported by substantial evidence (Tr. 35). The ALJ cites to no evidence to support this finding and the records show that plaintiff was receiving counseling through Community Health Center and was taking the medications Risperidone and Depakote at the time of the evaluation (Tr. 452-53). This was not a legally sufficient reason to discredit the opinion.

The ALJ also discredits this opinion based on the statements plaintiff made to the CDIU investigator regarding her work activity (Tr. 35). These statements were made seven months prior to the evaluation by Dr. Whitaker-Clark (Tr. 398, 455). Further, as discussed previously, it is not clear that this activity would be inconsistent with all of the

limitations opined by Dr. Whitaker-Clark.  The only other daily activity noted by the ALJ as inconsistent with the opinion was plaintiff judging a poetry contest (Tr. 35).  There is little information about what this involved, and while it may be inconsistent with certain social functioning limitations, it is not clear that that one activity is inconsistent with the multitude of limitations opined by Dr. Whitaker-Clark.

The ALJ failed to provide specific and legitimate reasons to discredit the opinion of Dr. Whitaker-Clark.  Further, because the disability determination may have changed had this opinion been given weight, the error was not harmless.  *See Molina*, 674 F.3d at 1115.

    (2)    Whether or not the ALJ provides a sufficient basis for questioning the credibility of plaintiff.

The Court already has concluded that the ALJ erred in reviewing the medical evidence and that this matter should be reversed and remanded for further consideration, *see supra*, section 1. In addition, a determination of a claimant's credibility relies in part on the assessment of the medical evidence. *See* 20 C.F.R. § 404.1529(c). Therefore, plaintiff's credibility should be assessed anew following remand of this matter.

## CONCLUSION

The ALJ discredited the medical opinions from all of the examining physicians in the record primarily based on isolated statements plaintiff made to a CDIU investigator (Tr. 34-35).  While these investigations are one factor to be considered in evaluating a case, it is unreasonable for it to be used to discredit all of the opinion evidence in the record, especially when those opinions are made by trained psychologists and

independently supported by objective testing and plaintiff's treatment records. The ALJ erred in evaluating these opinions, and in turn erred in determining plaintiff's residual functional capacity.

Based on these reasons, and the relevant record, the undersigned recommends that this matter be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Acting Commissioner for further consideration. **JUDGMENT** should be for **PLAINTIFF** and the case should be closed.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of de novo review by the district judge. *See* 28 U.S.C. § 636(b)(1)(C). Accommodating the time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on August 15**,** 2014, as noted in the caption.

Dated this 18th day of July, 2014.

J. Richard Creatura
United States Magistrate Judge